## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ANTONARI W. ALEXANDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:19cv00261** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **UM COLLINS, *et al.,*** | ) | **By:   Hon. Thomas T. Cullen** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |

Antonari W. Alexander, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against Unit Manager ("UM") Collins, Warden Kiser, Disciplinary Hearing Officer ("DHO") Counts, Lt. Hill, Lt. Adams, Lt. Messer, Correctional Officer Messer, Correctional Officer Mullins, Correctional Officer Parks, Correctional Officer Maloney, Virginia Department of Corrections ("VDOC") Director Clarke, and Regional Administrator Marcus Elam. Defendants filed a motion to dismiss and, after reviewing the pleadings, the court will grant their motion.

### I.

Alexander is incarcerated in Red Onion State Prison ("Red Onion"). He filed his original complaint in March 2019, an amended complaint in May 2019, and a supplemental complaint in March 2020. Although Alexander's amended complaint would typically replace his original complaint, his amended and supplemental complaints give no context to his claims and thus, the court has assembled the following facts—to the extent possible—from his original complaint, as well as from various attachments to his complaints, for purposes of this opinion.

In his original complaint, Alexander sets out a list of 42 "claims"; however, many of the purported "claims" do not allege facts in support of the "claims," do not identify defendants who allegedly violated his rights, and/or do not state actual violations of his rights at all. In his amended and supplemental complaints, Alexander alleges very few, if any, facts in support of his claims. Like the defendants in their motion to dismiss, the court has liberally construed his allegations and attempted to discern the facts and Alexander's claims arising from them.

It appears that the claims referenced in Alexander's complaints stem from a disciplinary hearing that was held on April 28, 2017, concerning two charges for aggravated assault upon a non-offender and a charge for threatening to commit a killing or attempting to kill. Alexander alleges that defendant DHO Counts denied him due process at his disciplinary hearing by failing to give him 24-hours' notice of the hearing and by not being fair and impartial. He also claims that Counts failed to follow VDOC's policies in effect at the time by improperly "upgrading" the charges. It appears that Alexander was initially charged with two counts of simple assault on a non-offender (one against defendant Officer Parks and one against defendant Officer Maloney) and threatening bodily harm (against defendant Officer Mullins), but those charges were later amended to two charges of aggravated assault on a non-offender and threatening to commit a killing or attempting to kill, respectively.[1]

---

[1] It appears that initially there was also another charge for possession or use of security materials, devices, or equipment relating to Alexander "running away" with handcuffs that Alexander claimed he thought were his eyeglasses. It is unclear from the pleadings whether that charge was vacated when his other charges were amended, whether it was part of the disciplinary hearing held on April 28, or what the outcome of that charge was. The court notes that Alexander does not mention that charge in the body of his complaints and there is no disciplinary offense report related to that charge in the record.

The underlying incidents that led to the disciplinary charges all occurred on April 15, 2017. Disciplinary records attached to Alexander's amended complaint indicate that, during an escort, Alexander became "disruptive and combative toward escorting staff." Alexander was "placed on the ground so staff could gain control over" him, and while he was on the floor, he "continued to be combative" by kicking his legs and striking Officer Parks twice in the "abdomen area." Sgt. Messer wrote a disciplinary offense report ("DOR"), charging Alexander with simple assault on a non-offender; the DOR was served on Alexander on April 16. The DOR noted that a disciplinary hearing on the charge was scheduled for April 20.

Disciplinary records also show that, on the same day, while Officer Mullins was placing Alexander in ambulatory restraints, Alexander stated that he was going to stab Officer Mullins to death the next time he saw him.  Mullins reported that Alexander "repeated himself several times, telling [him] how he was going to kill [him]." Officer Mullins wrote a DOR, charging Alexander with threatening bodily harm, and the DOR was served on Alexander on April 16. The DOR noted that a disciplinary hearing on the charge was scheduled for April 20.

Finally, disciplinary records show that, on that same day, Officer Maloney was securing the top tier of Alexander's housing unit after outside recreation when Alexander refused to lock down. After Alexander entered his cell and the top tier was secured, Officer Maloney approached Alexander's cell, the "door was accessed," and Officer Maloney attempted to restrain Alexander. Alexander assaulted Officer Maloney by punching him in the right cheek and upper back. Officer Maloney utilized OC spray and verbally ordered Alexander to the ground and Alexander "returned to his cell." A K9 entered the cell and relieved Officer Maloney from the situation. Officer Maloney wrote a DOR, charging Alexander with simple

assault on a non-offender, and the DOR was served on Alexander on April 16. The DOR noted that a disciplinary hearing on the charge was scheduled for April 20.

On April 20, 2017, with Alexander present for the disciplinary hearing, DHO Counts continued the hearing and determined that the charges should be amended to two counts of aggravated assault on a non-offender and threatening to commit a killing or attempting to kill. A disciplinary hearing on the amended charges was held on April 28, and Alexander was present for the hearing. In his defense of the charge regarding Officer Parks, Alexander gave no statement; in his defense of the charge involving Officer Mullins, Alexander stated that he only threatened to kill Officer Mullins because Mullins was trying to kill him; and in defense of the charge involving Officer Maloney, Alexander argued that his actions against Officer Maloney were in self-defense after Maloney allegedly spit in his face. DHO Counts found Alexander guilty of all three charges and imposed a penalty of 90-days loss of telephone and electronics privileges.[2]

Without further detail or explanation, Alexander states that DHO Counts "allowed her employees and friends to beat [Alexander] brutally." He alleges that DHO Counts retaliated against him by "upgrading" the charges and finding him guilty on behalf of her "budd[ie]s [and] coworkers." He also claims that he was without his property for an unspecified 10 days, that DHO Counts knew it, and that she failed to consider it. He does not allege when he was without this property, what the property consisted of, whether he had it before his hearing, or how not having it for 10 days may have impacted his disciplinary hearing.

---

[2] It is unclear whether Alexander lost 90 days of telephone and electronics privileges for each of the three convictions or total for the three convictions. Either way, it does not impact the court's adjudication of Alexander's complaints.

Alexander appealed his disciplinary convictions and they were upheld at all levels of appeal. Alexander argues that defendants UM Collins, Warden Kiser, VDOC Director Clarke, and Regional Administrator Elam failed to "rectif[y]" DHO Counts's denial of his due process.

After receiving the disciplinary convictions, Alexander's security classification changed, and he was placed in a segregation housing assignment. Alexander claims that he was transferred to segregation "w[ith]o[ut] cause [or] justifiable reasons." He argues that his placement in segregation was because of DHO Counts's "doings," and that UM Collins, Warden Kiser, and Regional Administrator Elam failed "to fix" it. He does not allege that these defendants made the decision to change his security classification or place him in segregation. He alleges that Warden Kiser refused to send him to a re-entry program at Sussex I State Prison ("Sussex I") even though he had three years and nine months left on his sentence and wanted to go to the re-entry program so that he could get a "jump start on breaking all of the [] bad habits and characteristics that [he] picked up in long term seg[regation]."

Alexander alleges that, prior to the April 28 disciplinary convictions, he was eight days away from being "infraction-free" for one year. As a result of the convictions, he claims that he has lost his "charge freeness," his "chance [to] go to the honor pod," and his opportunity to earn good-time credits at a different rate. As a result of his reassignment to a segregation housing unit, he alleges that he has lost his opportunity to get a job, to receive his "trade in custodian maintenance," "to get back in the kitchen" to learn how to cook, to participate in congregational religious programs and activities, his "privileges of being able [to] get physically fit," contact visits, as well as his "drive," "dignity," and his "energy [to] move [for]ward."

Alexander argues that segregation is "not a pleasant []or normal []or blossoming environment," that he cannot "grow or overcome" it, and that it has "broken" him "and so many others." He describes segregation as "harsh and harmful and cruel and unusual." Alexander states that segregation is "substantially more restrictive and confined and segregated" than general population housing assignments. Specifically, he claims that he remains in his cell for 22 hours per day; that his cell window has a "stained glass covering," so he is unable to see the "sun, moon, stars, [] clouds[,] rain[,] thunder[,] snow[,] and hail"; he is subject to "uncalled [for] and demoralizing," "dehumanizing," "degrading," and "exaggerated" strip searches every time he leaves his cell; cell lights are left on 24 hours a day; his mattress and pillow are flat; and the cells are filled with feces, bugs, and boogers and he is only given watered-down chemicals to clean them.[3] He alleges that he is only allowed three showers each week, he is given smaller portions of food on his tray that he has to eat in his cell, his property is limited to what fits into two bags, he is denied "vocational courses and education," he is unable to "make Jumah Salat prayer and meet [his] education needs at Talim,"[4] and he cannot "congregate with the Ummah [(community)]." Alexander also complains that he is being "forced" to participate in the VDOC's "challenge series" program while he is segregation.

Alexander alleges that as a result of his time in segregation, he has become "mentally . . . and spiritually disturbed." He states that he has suffered "several mental health ailments," such as memory loss, "extreme bouts of anger," depression, stress, inability to sleep,

---

[3] He also summarily alleges that he is "still getting beat up by Sgt. Mannon and [defendant] Officer Messer," but he provides no detail in support of this assertion.

[4] Alexander states that this is "Sunni Islamic knowledge that a Muslim must never neglect."

anxiety, paranoia, loss of interest in things he "once loved," irrationality, hopelessness, hallucinations, irritability, impulsiveness, and impatience. He claims that he is not receiving adequate mental health treatment. He also claims that he has suffered visual impairment, "rapid" weight loss, suicidal dreams, nightmares, "uncalled for bouts of" diarrhea, and the impulse to smear feces "all over the place."

Alexander states that his security classification and housing assignment are reviewed every 90 days by the Institutional Classification Authority ("ICA"), but summarily argues that it is not "confidential," "periodic," or "adequate and meaningful." He claims that UM Collins "has allowed his employees to keep" Alexander in segregation for an "undetermined time" without "adequate ICA reviews," and that UM Collins retaliated against Alexander by telling "his workers to write [Alexander] up and lie [about] him" so that Alexander "can stay" in segregation "because [he is] money to them." In an attachment to his amended complaint, it appears that UM Collins administratively reviewed and approved at least two of the ICA's determinations to continue Alexander's confinement in segregation. In a determination dated August 15, 2018, UM Collins approved Alexander's continued confinement in segregation where Alexander had accrued three disciplinary infractions during the review period. In a determination dated December 3, 2018, UM Collins approved Alexander's continued confinement in segregation where Alexander had not completed the requirements of the "step-down program."

Alexander argues that all of the defendants "were motivated by evil and reckless intention when they false[ly] imprisoned" him; all defendants violated the First, Eighth, Eleventh, and Fourteenth Amendments; the defendants have "belittled" him and his

"manhood" and have "tortured [him] into submission"; and "nobody" treats him fairly "because of [his] race [and] religion." He claims that his security "status" and the program that he is in are "cruel and unusual punishment wrap[p]ed up in indefinite solitary confinement and blanketed by evil and corrupt officers and the harsh[]est and unsanitary living conditions."

As relief, Alexander seeks damages; to have his disciplinary record expunged; transfer to Sussex I or II State Prison, Greensville Correctional Center, Lawrenceville Correctional Center, or to Boston, Massachusetts, and to never be housed at Red Onion again during this or any future period of incarceration; an apology from all defendants; to have DHO Counts fired; three additional "real chicken sandwiches" and three additional peanut butter and jelly sandwiches every day; "some string[s] to be pulled" to have his sentence reduced; and costs and expenses associated with this case.

On May 16, 2019, Alexander filed an amended complaint "to include more and different facts and add new legal claims." (*See* ECF No. 14.) In this pleading, Alexander purports to add "state claims," but he fails to make any factual allegations against any defendant. On March 6, 2020, Alexander filed a motion to amend his amended complaint. (*See* ECF No. 33.) On March 17, 2020, the court granted Alexander's motion as a supplemental complaint to the amended complaint. (*See* ECF No. 34). In Alexander's supplemental complaint (ECF No. 35), he complains once again that his constitutional rights to due process were violated because defendants Regional Administrator Elam, DHO Counts, and Warden Kiser did not provide him with a fair disciplinary hearing and that DHO Counts failed to follow VDOC procedures. Alexander references several provisions of Virginia's Constitution and VDOC Operating Procedure ("OP") 861.1.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant). When a plaintiff uses a collective term such as "defendants" to identify purported wrongdoers, his complaint is facially deficient. *See, e.g., Breyan v. Mental Health*, No. 2:17cv665, 2017 WL 1380647, at *2 (D.S.C. Mar. 24, 2017) (summarily dismissing

claims against "mental health" or "medical staff" and holding that the plaintiff "must identify the person or persons who purportedly violated his rights."); *Roberson v. Thomas*, No. 2:11-3114, 2012 WL 786275, at *2 (D.S.C. Feb. 16, 2012) (dismissing claims against a collection of "defendants"). A "[p]laintiff's general allegation that unspecified defendants and/or an entire 'department' violated his rights is conclusory and does not adequately state a § 1983 claim." *Breyan*, 2017 WL 1380647, at *2. In *Roberson*, the inmate plaintiff named several individuals as defendants, but then used the collective term "defendants" to claim that "he is being or has been subjected to cruel and unusual punishment." *Roberson*, 2012 WL 786275, at *2. The court found this to be insufficient and dismissed the claims as frivolous. *Id.*, 2012 WL 786275, at *3. Further, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for [his] name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Allen v. Young*, No. 7:20CV00206, 2021 WL 826778, at *3 (W.D. Va. Mar. 4, 2021) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974)).

While some of the factual allegations in Alexander's complaints allege serious issues, many of his claims fail to identify which defendant is actually liable for what violations of the law. In several of his allegations, Alexander simply claims that "defendants" or "the defendants" or "all defendants" violated his rights. Without specifying which defendants individually are responsible for which violations of specific provisions of law, Alexander's complaints are plainly insufficient. *Iqbal*, 556 U.S. at 676 (noting that a plaintiff must plead that each "defendant, though the official's own actions, has violated the Constitution.") Accordingly, the court will grant defendants' motion to dismiss these claims.

Further, although Alexander names Lt. Hill, Lt. Adams, Lt. Messer, Officer Mullins, and Officer Parks as defendants in the caption of his complaints, he has not identified any specific, alleged misconduct with respect to these defendants that is connected to this cause of action. Therefore, he has failed to state a cognizable § 1983 claim against them and the court will grant defendants' motion to dismiss the claims against defendants Lt. Hill, Lt. Adams, Lt. Messer, Officer Mullins, and Officer Parks.

## IV.

With regard to Officers Messer and Maloney, Alexander alleges very few facts against these defendants. As to Officer Messer, Alexander summarily states that he is "still getting beat up by" Officer Messer. As to Officer Maloney, Alexander alleges Officer Maloney was "crooked" and initiated an altercation between the two of them by spitting in his face.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010). Because Alexander provides no other facts to support (or explain) these bald

allegations, the court cannot determine whether any alleged force applied was "in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Accordingly, Alexander's allegations in this action are insufficient to support an excessive force claim against either defendant Officer Messer or Officer Maloney, and the court will grant defendants' motion to dismiss these claims.[5]

**V.**

As to DHO Counts, Alexander alleges that she violated his right to due process, failed to comply with VDOC policies, allowed staff to beat him, and retaliated against him. The court concludes that Alexander's allegations fail to state a viable claim for relief and, therefore, will grant defendants' motion to dismiss the claims against DHO Counts.

**A.**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. While prisoners retain rights under the Due Process Clause, this does not imply that prisoners have a constitutionally protected interest in avoiding penalties for prison disciplinary infractions. *Wolff v. McDonnell*, 418 U.S. 539, 556-67 (1974). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus,* 435 U.S. 247, 259 (1978). "To state a procedural due process violation, a plaintiff must (1) identify a protected

---

[5] Moreover, the court notes that Alexander has already pursued an Eighth Amendment excessive force claim against Officer Maloney based on similar (but more detailed) facts in another case, and the court granted Officer Maloney summary judgment on the claim. *See Alexander v. Parks, et al.*, Civil Action No. 7:17cv524, ECF Nos. 64 and 65.

liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Since "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," temporarily losing privileges as "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 486.

As a result of his disciplinary convictions, Alexander lost his privileges to use telephone and electronics for period of time. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Further, there is no constitutional or federal statutory right to use of electronics or a telephone while in prison. *See United States v. Alkire*, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. 1996); *Shell v. Boyd*, No. 7:18CV00333, 2019 U.S. Dist. LEXIS 167903, at *26 (W.D. Va. Sep. 30, 2019). Accordingly, the court concludes that Alexander's penalty does not constitute a protected interest under the Due Process clause and is therefore not entitled to due process protections.

Moreover, even if a protected interest was implicated, Alexander's complaints and attachments show that he received due process in his disciplinary hearing. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a

defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide the following: (1) advance written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563-66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Alexander argues that his due process rights were violated because he did not receive 24-hours' notice of his hearing and DHO Counts was not a fair and neutral decision-maker. Alexander's allegations, however, do not demonstrate a due process violation.

Alexander received DORs as to each of his charges on April 16, 2017, and each DOR noted that his hearing would be on April 20, 2017. On April 20, his charges were amended with him present, and his disciplinary hearings for the amended charges took place eight days later on April 28, 2017. Clearly, Alexander had more than 24 hours of notice of the charges before his hearing. A prisoner is entitled to advance notice of the charges against him in order to allow him to "marshal the facts in his defense and to clarify what the charges are." *Wolff*, 418 U.S. at 564. Accordingly, the court concludes that Alexander's allegations concerning notice fail to establish a due process violation.

Where a protected interest is implicated, an inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held

to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*,

100 F.3d 253, 259 (2d Cir. 1996). The court must presume that the DHO performed with

honesty and integrity; for the court to find the DHO less than impartial, "there must be some

substantial countervailing reason to conclude that [he was] actually biased with respect to

factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004)); *see*

*Wolff*, 418 U.S. at 592. Alexander's conclusory allegations that DHO Counts was not fair and

neutral are not sufficiently substantial or specific to overcome the presumption that she was a

fair and impartial decision maker. Accordingly, the court concludes that Alexander's

allegations fail to establish a due process violation. For these reasons, the court will grant the

defendants' motion to dismiss the due process claims against DHO Counts.

## B.

Alexander alleges that DHO Counts failed to comply with VDOC policies and

procedures. Allegations that a defendant failed to follow their agency's own policies or

procedures do not amount to constitutional violations. *United States v. Caceres*, 440 U.S. 741,

752-55 (1978); *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if

state law grants more procedural rights than the Constitution requires, a state official's failure

to abide by that law is not a federal issue). Accordingly, the court will grant defendants' motion

to dismiss as to these claims against DHO Counts.

## C.

Alexander alleges that DHO Counts "allowed her employees and friends to beat [him]

brutally." The Eighth Amendment prohibits prison officials from inflicting unnecessary and

wanton pain and suffering on prisoners. *Whitley*, 475 U.S. at 320. To resolve a claim that prison

staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21. Under the theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Alexander has alleged no facts to suggest that DHO Counts knew that anyone was "beat[ing]" Alexander, that she had a reasonable opportunity to prevent it, or that she intentionally chose not to act. Accordingly, Alexander's allegations do not state a viable bystander liability claim against DHO Counts, and the court will grant defendants' motion to dismiss that claim.

## D.

Alexander alleges that DHO Counts retaliated against him by amending his disciplinary charges and finding him guilty of them. To establish a retaliation claim, Alexander must show: (1) that he engaged in constitutionally-protected conduct; (2) that the defendant intended to retaliate against him for exercising his constitutional right; (3) that he suffered an adverse action; and (4) that a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011); *see also Lamp v. Wallace*, No. 3:04cv317, 2005 WL 5303512, at *4 (E.D. Va. Mar. 23, 2005) (*citing Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004)). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Conclusory allegations of retaliation are insufficient to state a claim.

*Id.* Alexander has not alleged that he engaged in any constitutionally protected conduct; that DHO Counts intended to retaliate against him for exercising a constitutional right; or that any causal link between a protected conduct and an adverse action exists. Therefore, Alexander's allegations do not state a viable retaliation claim against DHO Counts and the court will grant defendants' motion to dismiss that claim.

## VI.

Alexander alleges that Director Clarke, Regional Administrator Elam, Warden Kiser, and UM Collins failed to "fix" DHO Counts' due process violations, that UM Collins kept him in segregation, that Warden Kiser failed to send him to another facility to participate in a re-entry program, and that UM Collins retaliated against him. The court concludes that these allegations fail to state a plausible claim for relief and, therefore, will grant defendants' motion to dismiss these claims.

## A.

Alexander alleges that Director Clarke, Regional Administrator Elam, Warden Kiser, and UM Collins failed to correct DHO Counts' alleged due process violations. However, the court has already determined that Alexander has not state a viable due process claim against DHO Counts and, therefore, it follows that these defendants are not liable for failing to "fix" a due process violation that has not been established.

To the extent Alexander is asserting liability against these defendants in their supervisory capacities for the acts or omissions of DHO Counts, his claims fail. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that
> his subordinate was engaged in conduct that posed "a pervasive

> and unreasonable risk" of constitutional injury to citizens like the
> plaintiff; (2) that the supervisor's response to that knowledge was
> so inadequate as to show "deliberate indifference to or tacit
> authorization of the alleged offensive practices"[;] and (3) that
> there was an "affirmative causal link" between the supervisor's
> inaction and the particular constitutional injury suffered by the
> plaintiff.

*Shaw*, 13 F.3d at 799.  A plaintiff must "affirmatively show[] that the official charged acted

personally in the deprivation of the plaintiff's rights."  *Wright v. Collins*, 766 F.2d 841, 850 (4th

Cir. 1985).

Alexander has failed to allege facts that would establish any of the *Shaw* elements

against Director Clarke, Regional Administrator Elam, Warden Kiser, or UM Collins.

Moreover, government officials may not be held liable for the unconstitutional conduct of

their subordinates under a theory of *respondeat superior. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009);

*see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a

municipal "person" under 42 U.S.C. § 1983). Accordingly, the court will grant defendants'

motion to dismiss any supervisory liability claims against Director Clarke, Regional

Administrator Elam, Warden Kiser, and UM Collins.

## B.

To the extent Alexander complains that UM Collins "allowed" his employees to keep

Alexander in segregation and that Warden Kiser refused to send him to the re-entry program

at Sussex I so that he could get a "jump start" on breaking the "bad habits" he has developed

while in segregation, his allegations fail to state a cognizable § 1983 claim. An inmate has no

constitutional right to be housed in any particular prison, *see, e.g., Meachum v. Fano*, 427 U.S.

215 (1976), and no constitutionally based liberty interest to be released from segregated

confinement,[6] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[R]eclassification into a different security level is simply an incident of prison life." *Shelton v. Angelone*, 183 F. Supp. 2d 830, 838–39 (W.D. Va. 2002). Further, denial of the opportunity to participate in a re-entry program also does not state a constitutional claim. *See Tolliver v. Dep't of Soc. Servs.*, No. 7:17-2505-JMC-SVH, 2017 U.S. Dist. LEXIS 185299, at *6 (D.S.C. Oct. 12, 2017); *Tooley v. Ballard*, No. 1:09-cv-0183, 2012 U.S. Dist. LEXIS 41818, at *8–9 (S.D. W. Va. Mar. 27, 2012). Accordingly, Alexander's allegations fail to state a viable § 1983 claim against UM Collins or Warden Kiser, and the court will grant defendants' motion to dismiss as to these claims.

## C.

Alexander summarily alleges that UM Collins retaliated against him by "telling his workers to write [Alexander] up and lie [about] him" so that Alexander would stay in segregation because he was "money to them." Alexander's conclusory allegations of retaliation are insufficient to state a claim. *See Adams*, 40 F.3d at 74. Alexander has not alleged that he engaged in any constitutionally protected conduct, that UM Collins intended to retaliate against him for exercising a constitutional right, or that any causal link exists between protected conduct and an adverse action. *A Soc'y Without a Name*, 655 F.3d 342, 350. Therefore, Alexander's allegations do not state a colorable retaliation claim against UM Collins and the court will grant defendants' motion to dismiss as to this claim.

## VII.

---

[6] As to any potential state-created interest, a plaintiff must demonstrate (1) "a basis for an interest or expectation in state regulations" in avoiding the conditions of confinement in segregation, *Prieto*, 780 F.3d at 250, and (2) that those conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Alexander fails to describe an atypical and significant hardship in relation to the ordinary incidents of prison life.

Alexander also alleges several claims for which he does not adequately identify a responsible defendant. The court concludes that these claims, as presented to the court, are insufficient to state plausible claim for relief.

## A.

Alexander complains that he has been subjected to cruel and unusual living conditions. To establish that living conditions constitute cruel and unusual punishment, a prisoner must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler*, 989 F.2d at 1379. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. "In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* A sufficiently serious deprivation occurs when "a prison official's act or omission . . . results in the denial of the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).

None of Alexander's factual allegations are sufficient to support this type of claim. Alexander is housed in segregation. The described conditions, although difficult, are not unusual for a prisoner being confined in segregation. A review of his allegations confirms his failure to plead facts to show he is being deprived of a basic human need or that prison officials are indifferent to the conditions of his confinement. For example, not being able to look out the window to observe the different seasons and being confined for 22 hours per day are

ordinary conditions of segregation. Alexander has not pled any facts to demonstrate that any defendant was deliberately indifferent to cruel and unusual living conditions. Therefore, the court will grant defendants' motion to dismiss these claims.[7]

**B.**

To the extent Alexander is asserting a claim regarding missing property, this claim also fails.[8] The "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Alexander has a post-deprivation remedy under the Virginia Tort Claims Act, Va. Code § 8.01-195.3. Therefore, to the extent he is raising a § 1983 claim, it fails, and the court will grant defendants' motion to dismiss this claim.

**C.**

Alexander alleges that his religious needs are not being met because he cannot make "Jumah Salat prayer and meet his educational needs at Talim" and cannot congregate with the "Ummah" at the prison. To set forth a First Amendment religious-exercise claim, a plaintiff

---

[7] To the extent that Alexander summarily alleges that he has been denied adequate mental-health treatment, his allegation fails to state a claim. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). Inasmuch as Alexander fails to identify any person who allegedly failed to provide him with adequate mental-health treatment, the court cannot find that he has demonstrated deliberate indifference to his mental-health needs and, thus, he has failed state a claim for relief against any defendant.

[8] It is unclear what property was missing, why it was missing, or whether any prison staff was responsible for it being missing.

must establish (1) that he holds a sincere religious belief and (2) that prison regulations impose a substantial burden on his right to freely exercise that religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 340 (1987). For purposes of the First Amendment, a substantial burden is "one that put[s] 'substantial pressure on an adherent to modify his behavior and to violate his beliefs' or one that forces a person to 'choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)) (second alteration in original). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 Fed. App'x 729, 739 (6th Cir. 2007).

Alexander's allegations fall short of sufficiently alleging facts to set forth a First Amendment religious-exercise claim. Alexander fails to plead allegations to show prison regulations imposed a substantial burden on his right to practice his religion. Alexander does not plead any facts to demonstrate prison staff pressured him to violate his briefs of to abandon his beliefs. Nor does he allege facts to demonstrate how he was prevented from exercising his religion, to state who stopped him from exercising his religion, or to describe any requests he made while in segregation to practice his religion. As such, Alexander's allegations are insufficient to state a First Amendment claim against a defendant and the court will grant defendants' motion to dismiss.

**VIII.**

Alexander has also filed two motions to compel (ECF Nos. 46 and 50) and a motion seeking preliminary injunctive relief (ECF No. 55). In his first motion to compel (ECF No. 46), Alexander describes an incident that occurred on December 2, 2020, which began when his request to use the telephone was denied and he covered his cell window to protest the denial. Alexander claims he was subjected to force that caused him physical injuries and transferred to a cell that did not provide adequate living conditions. As relief, he asks to be moved to "a cell that is furnished." In his second motion to compel (ECF No. 50), he states that he is housed in an administrative segregation housing unit and asks the court to compel the prison administrators to "house [him] in an adequate pod that provides pod recreation for 5 hours or less or give [him] a pod job of rolling spoons and adequate time for family phone calls and kiosk time [for] downloading religious materials and family emails." As neither of these motions concern discovery issues, the court will construe both of these motions as motions seeking preliminary injunctive relief. Finally, in his motion seeking preliminary injunctive relief (ECF No. 55), Alexander seeks transfer to Sussex I or Wallens Ridge State Prison "because [his] spine and neck got injured by all of the torture and whiplash and slamming [him] on [his] face." He also claims that his eyes and memory are "suffering."

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in

his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). An interlocutory injunction is not appropriate when the harm complained of does not arise from the harm alleged in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). The movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16; *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

The allegations in Alexander's motions are either not related to the complaints in this action or, inasmuch as the court is granting defendants' motion to dismiss the complaints, Alexander has not shown that he is likely to succeed on the merits of the claims. Accordingly, the court will deny Alexander's motions for injunctive relief.

## IX.

For the reasons stated, the court will grant the defendants' motion to dismiss Alexander's complaint, amended complaint, and supplemental complaint, and dismiss his claims to the extent that Alexander may file a motion to reopen the case with an amended complaint within 30 days of the entry of this order. The court will also deny Alexander's motions to compel and for preliminary injunctive relief.

**ENTERED** this 20th day of April, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE